IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KAREN PAGANI, Ph.D. § | |
| Plaintiff § | |
| § | |
| v. § | CIVIL ACTION NO. A:15-CV-1149-LY |
| § | |
| THE UNIVERSITY OF TEXAS § | |
| AT AUSTIN, § | |
| Defendant § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, Karen Pagani, Ph.D. ("Dr. Pagani" or "Plaintiff") and, pursuant to Federal Rule of Civil Procedure 15(a), files this First Amended Complaint against Defendant, the University of Texas at Austin ("UT" or "Defendant"), and shows the Court the following:

### I.  NATURE OF THE CASE

1.  This is an employment retaliation and sex discrimination lawsuit brought under Title VII of the Civil Rights Act.  Defendant UT hired Dr. Pagani as a tenure track professor in the Department of French and Italian in 2008.  During her employment, UT recognized Dr. Pagani's strong performance, including her publication of scholarly articles in the top, preeminent journals in her field, publication of a book by a respected university press, receipt of strong teaching evaluations in line with and exceeding other faculty in her department, and her significant service to students, the department and other academic programs.  In approximately the fall of 2013, UT received a Charge of Discrimination filed by Dr. Pagani raising concerns about sex discrimination in her salary.  In 2014, UT denied Dr. Pagani tenure, in spite of her undeniably strong performance and record of accomplishments.  In denying her tenure, UT applied a skewed, heightened standard to Dr. Pagani than it had applied to other tenure applicants from her department, made up false and

pretextual reasons to justify the decision, and violated its own tenure procedures and practices, including slipping documents into her tenure dossier without advising her of the fact. UT retaliated against Dr. Pagani for filing the Charge of Discrimination, treated her differently than other tenure applicants and discriminated against her because she is female. UT's illegal actions have been devastating to Dr. Pagani, potentially ruining her career that she worked and studied for her entire adult life. This suit is brought to obtain justice for UT's illegal acts.

## II. PARTIES

2. Karen Pagani, Ph.D. is an individual who at all times worked for Defendant in Austin, Texas. Plaintiff resides at 1800 Cloverleaf Drive, Austin, TX 78723.

3. Defendant the University of Texas at Austin is a state entity with its principle offices located in Austin Texas. Defendant may be served by serving its president, Gregory L. Fenves, at 110 Inner Campus Drive, G3400, Austin, TX 78712-3400.

## III. VENUE AND JURISDICTION

4. Plaintiff brings this claim under the laws of the United States, particularly the Civil Rights Acts of 1964 as amended, codified at 42 U.S.C. §2000e and §1981(a). The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343.

5. Venue is prescribed by the General Venue Statute, 28 U.S.C. § 1391, and it properly lies in the Austin Division of the United States District Court for the Western District of Texas. All of Plaintiff's claims have arisen within Travis County, Texas.

## IV. ADMINISTRATIVE PROCEDURES

6. Plaintiff filed a Charge of Employment Discrimination against Defendant with the Texas Workforce Commission and Equal Employment Opportunity Commission within 180 and 300 days of the retaliatory and discriminatory acts complained of in this suit. Plaintiff received a notice of right to sue concerning the charge from the EEOC and this action was filed within 90 days of the date of the receipt of that notice. A copy of the Charge of Discrimination and Notice of Right to Sue (including date received stamped on reverse and envelope) are attached as Exhibit A.

## V.  FACTS

7. Defendant UT hired Dr. Pagani as a tenure track Assistant Professor of French Literature in the Department of French and Italian in 2008. Dr. Pagani received her undergraduate degree from Cornell University, and her Masters and Ph.D. in Comparative Literature.

8. While working as an Assistant Professor at UT, Dr. Pagani worked very hard and excelled in the areas expected of a university faculty member: publication, teaching and service.

9. UT faculty in the Department of French and Italian are encouraged to publish peer-reviewed scholarly articles in academic journals, as well as books in their field of study. While at UT and before her tenure review, Dr. Pagani wrote a scholarly book, *Man or Citizen: Forgiveness, Anger, and Authenticity in Rousseau.* Dr. Pagani's book was accepted for publication by the Penn State University Press, which is a highly regarded university press. Dr. Pagani also had five peer-reviewed articles that had been published or accepted for publication in academic journals, including one in the journal *Eighteenth-Century Studies*, which was recognized as "probably the foremost interdisciplinary journal for work on this period" and a "remarkable accomplishment." Additionally, Dr. Pagani received the Kirby Prize for best article of the year in 2010 from the respected academic journal *South Central Review*.

10. In addition to her outstanding academic and scholarly publication record, Dr. Pagani also was an outstanding teacher who tried to inspire and challenge her students to learn. Dr. Pagani received strong teaching evaluations from other faculty members who observed her teaching. At the time she was considered for tenure, she had an overall student instructor rating of 4.2 (on a scale of 1 to 5, with 5 being the highest). Dr. Pagani's student rating was higher than the average UT faculty member and was in line with or higher than the departmental average.

11. Dr. Pagani was lauded for her service to UT, including "significant contributions to French and Italian, the Program in Comparative Literature, the Center for European Studies and the Director's Circle of UT's Humanities Institute." In addition to her involvement in various university academic institutions, Dr. Pagani also regularly advised and mentored students.

12. In approximately the fall of 2013, UT received a Charge of Discrimination filed by Dr. Pagani raising concerns about sex discrimination, primarily relating to her salary. After four years as tenure track professor, Dr. Pagani's annual salary was $55,500, the lowest in the department and lower than a similarly situated male colleague. Dr. Pagani was concerned about her salary for many reasons, including the fact that she was a mother with children to support in an expensive city, had studied for years at expensive academic institutions and had accrued a large amount of student loan debt, was working hard as UT faculty member, and wanted to be treated fairly like her male colleagues.

13. Dr. Pagani also raised her concern about her salary internally at UT before filing the Charge of Discrimination. UT administration officials told her the issue would be reviewed, but at the time of filing the charge, Dr. Pagani had not received any raise or change in her salary.

14. Filing a Charge of Discrimination is within an employee's legal rights and is considered "protected activity" under the Civil Rights Act of 1964.  It is illegal for an employer to retaliate against an employee for filing a Charge of Discrimination.

15. UT administration officials, including Dean Randy Diehl and the Chairman of the Department of French and Italian, David Birdsong were aware of Dr. Pagani's 2013 Charge of Discrimination and they, their staff members, and university lawyers helped respond to it.  UT denied that Dr. Pagani had been discriminated against because of her sex.  Nonetheless, after filing the Charge of Discrimination, UT awarded Dr. Pagani a merit raise of approximately $3,500.

16. Approximately one year after Dr. Pagani filed a Charge of Discrimination, in the fall of 2014, Dr. Pagani began the tenure review process.  At that time, Dr. Pagani was optimistic that she would receive tenure for many reasons, including her strong performance, she had just recently been awarded a significant merit raise, and because Chairman Birdsong had formally advised her that she was meeting the high expectations of the department and thanked her for her "valuable and conscientious contributions."

17. During the tenure review of Dr. Pagani, UT applied a skewed, far more stringent standard to Dr. Pagani than it had applied to other tenure applicants from her department.  For example, Chairman Birdsong, who had responded to Dr. Pagani's Charge of Discrimination, advocated strongly against her tenure even though he had recently previously supported the application for tenure of a far less qualified male faculty member who had not filed a charge of discrimination.

18. Chairman Birdsong acknowledged the "indisputable evidence of quality" in Dr. Pagani's tenure dossier, but nonetheless argued against tenure claiming it was necessary to "drill deeper."  In his attempt to "drill deeper" and support his argument against tenure, Chairman

Birdsong cited a small number of alleged typographical and translation errors in Dr. Pagani's article that had been published in the preeminent scholarly journal in her field and had been recognized as "a remarkable accomplishment." Chairman Birdsong also focused on one course in which Dr. Pagani had received low student teaching evaluations, in spite of the fact that her overall student evaluations were above the University average and were in line with other members of the department.

19. Chairman Birdsong advocated against Dr. Pagani's tenure to other persons involved in the tenure review. Dean Randy Diehl, whose office was also involved in responding to Dr. Pagani's Charge of Discrimination, completely adopted the arguments of the Chairman against tenure for Dr. Pagani, quoting them extensively as his justification for recommending against tenure.

20. During the tenure review, UT also violated its own tenure procedures and practices. At the beginning of the review, Chairman Birdsong sent an email to Dr. Pagani requiring her to submit within three days voluminous, detailed, and superfluous information and documentation concerning her academic publications going back for years that *no other* member of the department had *ever* been asked to submit and that almost no faculty member could ever provide. Chairman Birdsong sought prior letters, correspondence and information regarding Dr. Pagani's interaction with publishers, including those that had declined to publish her work, including dates of all interactions with editors, readers, publishers, etc. and copies of all correspondence, submissions, revisions, re-submissions of her publications, and other voluminous information. Although Chairman Birdsong ultimately withdrew the unusual request for information because of strong objections from other faculty members, the request showed that Dr. Pagani was being singled out and treated differently than other faculty who had gone up for tenure.

21. UT treated Dr. Pagani differently and failed to follow its own policies and practices in other ways as well. For example, Chairman Birdsong secretly placed an additional memorandum in Dr. Pagani's tenure file making further arguments against her tenure to the UT President. UT policy and practice provides that the tenure candidate must be informed of all documents that are placed in a tenure file. Dr. Pagani happened to discover the document when she requested a copy of her file during the tenure process.

22. The procedural violations in Dr. Pagani's tenure review were so significant that UT's faculty Committee of the Counsel on Academic Freedom and Responsibility ("CCAFR") found that the "promotion and tenure decision making process of the Candidate [Dr. Pagani] was permeated by apparent or real conflicts of interest" and there were serious procedural violations in the decision-making process that could have had "a significant impact on the ultimate decision" in Dr. Pagani's case. CCAFR recommended that Dr. Pagani be re-reviewed for tenure in a manner that would avoid conflicts of interest and procedural violations, but then UT President William Powers refused to abide by CCAFR's recommendations, claiming that it is to individual faculty members to recuse themselves if they determine that there exists a conflict of interest.

23. The evidence is overwhelming that UT retaliated against Dr. Pagani because she filed a Charge of Discrimination. UT, including Chairman Birdsong and/or Dean Diehl, singled out Dr. Pagani and treated her differently than other recent tenure applicants, held her to a skewed, heightened standard, violated its own policies and practices including slipping documents into her tenure dossier, and made up false, pretextual reasons to justify its denial of tenure.

24. UT also discriminated against and scrutinized Dr. Pagani more closely because she is female. In addition to the false and pretextual reasons to justify the tenure decision, the violations of policy and practice, and the different treatment of a similarly situated male faculty

member, upon information and belief, approximately five years earlier, Birdsong (who was not chairman at the time) also opposed the tenure application of another female faculty member who was highly qualified. That other female faculty member was ultimately able to obtain tenure with the support of the Chairwoman at the time of the Department of French and Italian and other faculty members.

## VI.   CAUSES OF ACTION

### TITLE VII OF THE CIVIL RIGHTS ACT

25.   By this reference, Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if they were set forth within this cause of action.

26.   Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII").

27.   Defendant is an employer within the meaning of Title VII and employs over 500 employees.

28.   Plaintiff engaged in conduct protected by Title VII, including filing a Charge of Discrimination and opposing sex discrimination.

29.   Defendant retaliated against Plaintiff because of her protected conduct or activity, including denying her tenure which will result in the termination of her employment effective at the end of the 2015-2016 academic year.

30.   Defendant discriminated against Plaintiff because of her sex or gender (female).

## VII.   DAMAGES

31.   As a direct and proximate result of Defendant's conduct set forth in this Complaint, Plaintiff has suffered and will continue to suffer real and serious damages. The denial of tenure

and the loss of tenure will affect Plaintiff for the rest of her life, and will result in lost income, insurance and other benefits.  Defendant's illegal actions have damaged Plaintiff's reputation and seriously hurt her career, caused embarrassment, mental anguish, stress, pain, anxiety, loss of enjoyment of life, and other damage.  Plaintiff seeks recovery for all past and future lost wages and benefits, compensatory damages, attorney's fees, expert fees and other costs, and all other damages to which Plaintiff proves are appropriate.

## VIII.   ATTORNEY FEES AND COSTS

32.     Plaintiff is entitled to and requests an award of attorney fees and costs under Title VII and the TCHRA.

## IX.   JURY DEMAND

33.     Plaintiff requests a jury on all issues so triable.

## X.   PRAYER

**ACCORDINGLY,** Plaintiff respectfully requests that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendant for all damages, interest as allowed by law, attorneys fees and costs of Court, and such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

**The McKinney Law Firm**
A Professional Corporation


By:   */s/ Christopher J. McKinney*
      Christopher J. McKinney
      State Bar No. 00795516
      110 Broadway Street, Suite 420
      San Antonio, Texas 78205
      Telephone:   (210) 832-0932
      Facsimile:   (210) 568-4101
      chris@themckinneylawfirm.com


**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been delivered to the following individual(s) in accordance with the applicable Federal Rules of Civil Procedure on February 19, 2016.


KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

H. CARL MYERS
Assistant Attorney General

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120 PHONE
(512) 320-0667 FAX
Carl.myers@texasattorneygeneral.gov

ATTORNEYS FOR DEFENDANT


                                                      */s/ Christopher J. McKinney*
                                                      Christopher J. McKinney